UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| DONALD W. AREHART,<br><br>Plaintiff,<br><br>vs.<br><br>NICHOLAS GLASS, ID 879, individual and official capacity,<br><br>Defendant. | 5:26-CV-05118-RAL<br><br>OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS AND 1915A SCREENING |

Plaintiff Donald W. Arehart, currently incarcerated at the Pennington County Jail, filed a pro se prisoner civil rights lawsuit under 42 U.S.C. § 1983. Doc. 1. Arehart filed a motion for leave to proceed in forma pauperis and provided his prisoner trust account report. Docs. 2, 3.

## I. Motion for Leave to Proceed In Forma Pauperis

Under the Prison Litigation Reform Act (PLRA), a prisoner who "brings a civil action or files an appeal in forma pauperis . . . shall be required to pay the full amount of a filing fee." 28 U.S.C. § 1915(b)(1). The Court may accept partial payment of the initial filing fee where appropriate. Therefore, "[w]hen an inmate seeks pauper status, the only issue is whether the inmate pays the entire fee at the initiation of the proceeding or over a period of time under an installment plan." Henderson v. Norris, 129 F.3d 481, 483 (8th Cir. 1997) (alteration in original) (quoting McGore v. Wrigglesworth, 114 F.3d 601, 604 (6th Cir. 1997)).

The initial partial filing fee that accompanies an installment plan is calculated according to 28 U.S.C. § 1915(b)(1), which requires a payment of 20 percent of the greater of:

(A) the average monthly deposits to the prisoner's account; or

> (B) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal.

Arehart reports an average monthly balance of $0.00 and average monthly deposits for the past six months of $5.16.[1] Doc. 3 at 1. Based on this account information, the Court grants Arehart's motion for leave to proceed in forma pauperis, Doc. 2, and waives his initial partial filing fee because the initial partial filing fee would be greater than his current balance. See 28 U.S.C. § 1915(b)(4) ("In no event shall a prisoner be prohibited from bringing a civil action . . . for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee.").

To pay his filing fee, Arehart must "make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account." 28 U.S.C. § 1915(b)(2). The statute places the burden on the prisoner's institution to collect the additional monthly payments and forward them to the Court as follows:

> After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

Id. The installments will be collected pursuant to this procedure. The Clerk of Court will send a copy of this order to the appropriate financial official at Arehart's institution. Arehart remains responsible for the entire filing fee, as long as he is a prisoner. See In re Tyler, 110 F.3d 528, 529–30 (8th Cir. 1997).

---

[1] Arehart's prisoner trust account report does not provide supporting ledger sheets or account statements for the past six months, but the Pennington County Jail has struggled with recordkeeping since a county-wide computer hack. While this Court does not intend to relieve inmates of their duty to comply with their obligation for proceeding in forma pauperis, what Arehart submitted shows that he is entitled to in forma pauperis status.

## II. 1915A Screening

### A. Factual Background as Alleged by Arehart

Arehart was a passenger in a vehicle parked at a truck stop in Rapid City, South Dakota. Doc. 1 at 1, 4. Nicholas Glass, a Rapid City Police Officer, was driving through the parking lot when he saw the vehicle Arehart was in, and "decided it looked suspicious, decided to see if it was stolen." Id. at 2, 4. Officer Glass approached the vehicle and saw that the vehicle had dealer license plates in both the front and back windshield, which Arehart alleges were "completly [sic] legal[.]" Id. at 4. Officer Glass looked through the windows and saw Arehart, who was sitting in the "very back of [the] van," and told Arehart that he had "watched [him] for a while[.]" Id. At that point, Officer Glass "put his hand on his gun and yelled for [Arehart] to Exit the Vehicle." Id. Arehart opened the door, and Officer Glass "immediately grabbed [him], told [him] not to move, keep [his] hands at [his] Sides." Id. Officer Glass told Arehart that he "Saw [him] put Something in a Shoe." Id. After Officer Glass "detain[ed]" Arehart, he looked through the vehicle, and Arehart alleges that there was "No mention of Weapons or anything dangerous." Id. Officer Glass ran a search for warrants, and there were none. Id. Officer Glass also ran a search for the vehicle to see if it was stolen, and it was not. Id. at 5. Officer Glass then attempted to call Arehart's probation officer twice, but there was no answer either time. Id. Officer Glass also asked Arehart questions that Arehart alleges were "designed to trip up [Arehart's] answers." Id. Arehart alleges that he was not the owner of the vehicle and was never in control of the vehicle. Id.

After Arehart was handcuffed and "Searched physically," Officer Glass started to "tear Vehicle apart on the Scene, Turned away back-up, turned away drug dog." Id. Arehart alleges that "from the Very onset, this was a witch hunt from Officer Glass." Id. Officer Glass found drugs in the vehicle, which Arehart alleges were not his property. Id. Arehart alleges that Officer

Glass "lied to [him] stating if [Arehart] admit to a pipe in the vehicle he would let [Arehart] go, it was no big deal[.]" Id. Arehart also alleges that the owner of the vehicle was in the store while Arehart was handcuffed, but that Officer Glass "Never Once tried to look for driver." Id. Arehart alleges that he "blew Zero's on p.b.t. machine," and that a blood draw was performed. Id. He also alleges that there was "No Violation in first place for Officers to start looking in window's [sic]." Id.

Arehart claims he was "detained, Questioned, placed in handcuffs," and that his statement was taken "under duress" and that he was "Coehersed [sic]" to give answers. Id. at 6. He also alleges that when he was arrested and while he was in custody and being interrogated, he was not informed of his rights pursuant to Miranda v. Arizona, 384 U.S. 436 (1966). Id. Additionally, Arehart alleges that Officer Glass "lied on affidavit, was not truthful at all in his testimony," and that Officer Glass's body camera and police vehicle dash camera footage "will prove [Arehart's] testimony to be Correct." Id. at 5.

Arehart alleges that he was supposed to have surgery on his eyes, but that he has not been able to receive the surgery in jail and is therefore going blind. Id. at 6; see also id. at 8 (alleging that he has "missed Crucial Surgeries[]"). He claims that he "Lost everything [he] own[s], lost a disability case, due to being in [jail], hundred thousand dollar settlement for being blind on Hold, incarcerated is months awaiting trial." Id. at 4. As relief, Arehart seeks $5 million in damages. Id. at 8.

**B. Capacity in Which Only Defendant is Sued**

Arehart names only Officer Glass as a defendant, but he does not specify whether he sues him in his individual or official capacity. Id. at 2. When a plaintiff does not specifically state in which capacity he sues a defendant, the Court must apply the course of proceedings test. S.A.A.

v. Geisler, 127 F.4th 1133, 1138 (8th Cir. 2025) (en banc). "[T]he fundamental question is whether the course of proceedings has put the defendant 'on notice that she was being sued in her individual capacity' and that 'her personal liability was at stake.'" Id. at 1139 (quoting Daskalea v. D.C., 227 F.3d 433, 448 (D.C. Cir. 2000)). "[T]he underlying inquiry remains whether the plaintiff's intention to hold a defendant personally liable can be ascertained fairly." Id. (quoting Biggs v. Meadows, 66 F.3d 56, 61 (4th Cir. 1995)). "Relevant factors include, but are not limited to, how early in the litigation the plaintiff first specified individual capacity claims, whether the plaintiff's complaint included a prayer for punitive damages, and whether the defendant declined to raise a qualified immunity defense." Id. The United States Court of Appeals for the Eighth Circuit noted that "[o]ur sister circuits can offer helpful guidance." Id. Other circuits have considered factors such as the nature of the plaintiff's claims and whether the complaint alleges that defendant acted in accordance with a government policy or custom. Goodwin v. Summit Cnty., 703 F. App'x 379, 382 (6th Cir. 2017); Briggs, 66 F.3d at 61. "[N]o single factor is dispositive in an assessment of the course of proceedings." S.A.A., 127 F.4th at 1140 (quoting Powell v. Alexander, 391 F.3d 1, 22 (1st Cir. 2004)).

Here, Arehart seeks only monetary damages, which suggests that he intended to sue Officer Glass in his individual capacity. Doc. 1 at 8. Arehart's complaint also centers on actions Officer Glass took in his role as a Rapid City Police Officer, which suggests that Arehart also intended to sue Glass in his official capacity. See id. at 4–5. For purposes of screening, this Court liberally construes Arehart's complaint as bringing claims against Officer Glass in both his individual and official capacities.

### C. Legal Standard

A court must assume as true all facts well pleaded in the complaint when screening under 28 U.S.C. § 1915A. Est. of Rosenberg v. Crandell, 56 F.3d 35, 36 (8th Cir. 1995). Pro se and civil rights complaints must be liberally construed. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam); Bediako v. Stein Mart, Inc., 354 F.3d 835, 839 (8th Cir. 2004). Even with this construction, "a *pro se* complaint must contain specific facts supporting its conclusions." Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); see also Ellis v. City of Minneapolis, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam). Civil rights complaints cannot be merely conclusory. Davis v. Hall, 992 F.2d 151, 152 (8th Cir. 1993) (per curiam) (citation omitted); Parker v. Porter, 221 F. App'x 481, 482 (8th Cir. 2007) (per curiam).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted). If a complaint does not contain these bare essentials, dismissal is appropriate. Beavers v. Lockhart, 755 F.2d 657, 663 (8th Cir. 1985). Twombly requires that a complaint's factual allegations must be "enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true[.]" Twombly, 550 U.S. at 555 (citations omitted); see also Abdullah v. Minnesota, 261 F. App'x 926, 927 (8th Cir. 2008) (per curiam) (noting complaint must contain either direct or inferential allegations regarding all material elements necessary to sustain recovery under some viable legal theory (citation omitted)). Under 28 U.S.C. § 1915A, a court must screen prisoner complaints and dismiss them if they "(1) [are] frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is

immune from such relief." 28 U.S.C. § 1915A(b). This Court will now assess Arehart's claims under 28 U.S.C. § 1915A.

**D. Legal Analysis**

**1. § 1983 Claims**

**a. Official Capacity Claims**

As discussed above, this Court applies the course of proceedings test and liberally construes Arehart's complaint as bringing claims against Officer Glass in his official capacity. "A suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity." Veatch v. Bartels Lutheran Home, 627 F.3d 1254, 1257 (8th Cir. 2010). Therefore, Arehart's official capacity claims against Officer Glass are equivalent to claims against Rapid City. See Doc. 1 at 2 (providing that Officer Glass is a Rapid City Police Officer).

"[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). A municipal government may be sued only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," deprives a plaintiff of a federal right. Id.; see also Clay v. Conlee, 815 F.2d 1164, 1170 (8th Cir. 1997) (finding that "the [governmental] entity's official 'policy or custom' must have 'caused' the constitutional violation" in order for that entity to be liable under § 1983). To establish governmental liability premised on an unofficial custom rather than an official policy, a plaintiff must allege facts to support a finding of "a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees" and "deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after

notice to the officials of that misconduct[.]" Brewington v. Keener, 902 F.3d 796, 801 (8th Cir. 2018) (quoting Corwin v. City of Independence, 829 F.3d 695, 700 (8th Cir. 2016)). A § 1983 complaint does not need to "specifically plead the existence of an unconstitutional policy or custom to survive a motion to dismiss." Crumpley-Patterson v. Trinity Lutheran Hosp., 388 F.3d 588, 591 (8th Cir. 2004) (citing Doe *ex rel.* Doe v. Sch. Dist., 340 F.3d 605, 614 (8th Cir. 2003)). But the complaint must still include some allegation, reference, or language that creates an inference that the conduct resulted from an unconstitutional policy or custom. Id.; see also Doe, 340 F.3d at 614 ("At a minimum, a complaint must allege facts which would support the existence of an unconstitutional policy or custom.").

Here, Arehart provides no facts alleging the existence of an unconstitutional policy or custom and only alleges that Officer Glass violated his rights during his arrest and when he lied on an affidavit. See Doc. 1 at 4–7. While "[t]he Eighth Circuit has not directly addressed the quantum of 'continuing, widespread, persistent' conduct a plaintiff must allege to satisfy the Iqbal standard in this context, . . . it has held that isolated incidents do not suffice[.]" Ball-Bey v. Chandler, 415 F. Supp. 3d 884, 895 (E.D. Mo. 2019) (citations omitted). See also Quinn v. Doherty, 637 F. Supp. 3d 647, 667 (D. Minn. 2022) ("But Plaintiffs' specific allegations relate only to Plaintiffs' experience. This isolated event does not establish a custom."). Because Arehart provides no facts suggesting the existence of "a continuing, widespread, persistent pattern of unconstitutional misconduct[,]" Brewington, 902 F.3d at 801 (citation omitted), he fails to allege the existence of a policy or custom. Therefore, Arehart's claims against Officer Glass in his official capacity are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### b. Individual Capacity Claims

#### i. Fourth Amendment

Liberally construing his complaint, Arehart brings a Fourth Amendment unreasonable seizure claim. Doc. 1 at 4–5. The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. Const. amend. IV. But "[t]he Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable." Florida v. Jimeno, 500 U.S. 248, 250 (1991) (citation omitted). Therefore, "[t]o establish a violation of the Fourth Amendment, 'the claimant must demonstrate a seizure occurred and the seizure was unreasonable.'" Davis v. Dawson, 33 F.4th 993, 997 (8th Cir. 2022) (quoting Quraishi v. St. Charles Cnty., 986 F.3d 831, 839 (8th Cir. 2021)).

Beginning with whether a seizure occurred here, the Eighth Circuit has recognized that "[o]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." United States v. Barry, 394 F.3d 1070, 1074 (8th Cir. 2005) (quoting Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968)). "In determining whether an encounter between a police officer and a citizen constitutes a Fourth Amendment detention or seizure, the crucial test is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." Id. at 1074–75 (citation modified). Here, Arehart alleges that after Officer Glass initially approached him in the vehicle, Officer Glass "put his hand on his gun and yelled for [Arehart] to exit the Vehicle." Doc. 1 at 4. For screening purposes, the Court assumes that a seizure occurred at this point. See Barry, 394 F.3d at 1075 (finding that a seizure occurred when

occupants were asked to exit their vehicle). Whether this seizure was reasonable depends on what type of seizure occurred. "Seizures fall into two categories: investigative stops and arrests." United States v. Dixon, 51 F.3d 1376, 1380 (8th Cir. 1995). "Police officers violate the Fourth Amendment when they conduct an arrest without a warrant or probable cause." Waters v. Madson, 921 F.3d 725, 736 (8th Cir. 2019) (citing Baribeau v. City of Minneapolis, 596 F.3d 465, 478 (8th Cir. 2010) (per curiam)). But "officers need only reasonable suspicion based on the totality of the circumstances[]" to conduct a temporary investigative stop. Id.

"An officer can conduct a brief, investigatory stop—what we call a Terry stop—when the officer has a reasonable, articulable suspicion that criminal activity is afoot." Haynes v. Minnehan, 14 F.4th 830, 835 (8th Cir. 2021) (citation modified). "During a Terry stop, officers must use the least intrusive means of detention and investigation, in terms of scope and duration, that are reasonably necessary to achieve the purpose of the Terry stop." United States v. Sanford, 813 F.3d 708, 713 (8th Cir. 2016) (citation modified); see also Haynes, 14 F.4th at 835 (providing that "[a] lawful Terry stop may nonetheless violate the Fourth Amendment if it is excessively intrusive in its scope or manner of execution." (citation modified)). "An investigative detention may turn into an arrest if it 'lasts for an unreasonably long time or if officers use unreasonable force.'" United States v. Sanchez, 417 F.3d 971, 975 (8th Cir. 2005) (quoting United States v. Navarrete-Barron, 192 F.3d 786, 790 (8th Cir. 1999)).

The Eighth Circuit has recognized that the line between an investigatory stop and an arrest "can be hazy." Pollreis v. Marzolf, 9 F.4th 737, 745 (8th Cir. 2021) (quoting Chestnut v. Wallace, 947 F.3d 1085, 1088 (8th Cir. 2020)). But even without considering where to draw the line between an investigatory stop and an arrest in Arehart's case, the Court cannot determine, at this stage of the proceedings, that Arehart's Fourth Amendment unreasonable seizure claim is wholly

without merit. Here, Arehart alleges that Officer Glass approached the vehicle because it "looked suspicious" and to see if it was stolen. Doc. 1 at 4. Officer Glass then looked in the car windows and ordered Arehart out of the vehicle. Id. Arehart alleges that Officer Glass looked in the vehicle and made "No mention of Weapons or anything dangerous." Id. at 4. After Officer Glass found that there were no warrants for Arehart and could not reach Arehart's probation officer, Officer Glass handcuffed Arehart and searched him, and Arehart was "totally clean." Id. at 5; see Haynes, 14 F.4th at 835 (recognizing that "because handcuffs constitute 'greater than a de minimus intrusion,' their use 'requires the [officer] to demonstrate that the facts available to the officer would warrant a man of reasonable caution in [believing] that the action taken was appropriate.'" (alterations in original) (quoting El-Ghazzawy v. Berthiaume, 636 F.3d 452, 457 (8th Cir. 2011))). Therefore, Arehart's Fourth Amendment unreasonable seizure claim against Officer Glass in his individual capacity for money damages survives § 1915A screening.

**ii. Fifth Amendment**

Arehart brings a Fifth Amendment claim alleging that his right against self-incrimination was violated when he was interrogated without being informed of his rights under Miranda v. Arizona, 384 U.S. 436 (1966). Doc. 1 at 6. The Fifth Amendment provides that "[n]o person shall be . . . compelled in any criminal case to be a witness against himself[.]" U.S. Const. amend. V. "In Miranda, the Court concluded that additional procedural protections were necessary to prevent the violation of this important right when suspects who are in custody are interrogated by the police[,]" and the Supreme Court therefore required that suspects be informed of their rights under the Fifth Amendment before custodial interrogation. Vega v. Tekoh, 597 U.S. 134, 141 (2022).

But "a violation of Miranda is not itself a violation of the Fifth Amendment," and the Supreme Court of the United States has declined to extend Miranda to confer a right to sue under

§ 1983. Id. at 152. In other words, "[b]ecause the reading of Miranda warnings is a procedural safeguard rather than a right arising out of the Fifth Amendment itself, the remedy for a Miranda violation is the exclusion from evidence of any compelled self-incrimination, not a section 1983 action." Hannon v. Sanner, 441 F.3d 635, 636 (8th Cir. 2006) (citation modified); see also Winslow v. Smith, 696 F.3d 716, 731 n.4 (8th Cir. 2012) ("Statements compelled by police interrogations of course may not be used against a defendant at trial, but it is not until their use in a criminal case that a violation of the Self-Incrimination Clause occurs." (quoting Chavez v. Martinez, 538 U.S. 760, 767 (2003) (plurality opinion)). Therefore, Arehart's Fifth Amendment self-incrimination claim against Officer Glass in his individual capacity for money damages is dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

**iii. Fourteenth Amendment**

Liberally construing his complaint, Arehart brings a Fourteenth Amendment substantive due process claim, alleging that Officer Glass manufactured false evidence.[2] Doc. 1 at 5. "To state a substantive due process claim against a state official, a plaintiff must demonstrate that a fundamental right was violated and that the official's conduct shocks the conscience." Mitchell v. Dakota Cnty. Soc. Servs., 959 F.3d 887, 898 (8th Cir. 2020) (citing Folkerts v. City of Waverly, 707 F.3d 975, 980 (8th Cir. 2013)). Here, Arehart's claim appears to be based on his liberty interest

[2] In one section of the complaint which instructs plaintiffs to list the constitutional or federal rights that they allege have been violated, Arehart lists "Fourteenth Amendment, purgury [sic][.]" Doc. 1 at 7. To the extent Arehart is attempting to allege a claim under 18 U.S.C. §§ 1621–1623 (federal perjury criminal statutes), he may not do so because there is no private right of action to bring claims under a federal criminal statute. See Edwards v. Edwards, No. 4:23-CV-4106-LLP, 2023 WL 7305026, at *8 (D.S.D. Nov. 6, 2023) (recognizing that "[i]t is well established that federal criminal statutes generally do not provide private rights of action."); Horde v. Elliot, No. 17-CV-800 (WMW/SER), 2018 WL 987683, at *18 (D. Minn. Jan. 9, 2018) (providing that "it is well-settled that there is no private right of action under 18 U.S.C. §§ 1622–1623."), report and recommendation adopted by 2018 WL 985294 (D. Minn. Feb. 20, 2018).

in a fair criminal proceeding. See generally Doc. 1; see also Wilson v. Lawrence Cnty., 260 F.3d 946, 956 n.8 (8th Cir. 2001) (recognizing the "liberty interest . . . in obtaining fair criminal proceedings before being denied one's liberty in the most traditional sense.").

As for what constitutes conscience-shocking behavior, "the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Folkerts, 707 F.3d at 980 (quotation omitted). "Manufacturing false evidence may be sufficient to shock the conscience and violate a plaintiff's due process rights. A false evidence claim requires proof that the investigators deliberately fabricated evidence to frame the defendant." Mitchell, 959 F.3d at 899 (internal citations omitted); see also White v. Smith, 696 F.3d 740, 758 (8th Cir. 2012) ("There can be little doubt that intentionally manufacturing false evidence to convict a criminal defendant is the sort of brutal and inhumane abuse of official power that shocks the conscience." (citation modified)). Here, Arehart alleges that Officer Glass "lied on affidavit [and] was not truthful at all in his testimony[.]" Doc. 1 at 5, 7. Arehart also alleges that Officer Glass was on a "witch hunt." Id. at 5. Although these allegations may be merely conclusory, the Court cannot determine that Arehart's Fourteenth Amendment claim is wholly without merit at this stage of the proceedings. Therefore, Arehart's Fourteenth Amendment substantive due process claim against Officer Glass in his individual capacity for money damages survives § 1915A screening by a thin margin.

**2. State-Law Claim**

In addition to his claims under 42 U.S.C. § 1983, Arehart also alleges a state-law claim under Article VI, Section 2 of the South Dakota Constitution. Doc. 1 at 4. Both the Fourteenth Amendment of the United States Constitution and Article VI, Section 2 of the South Dakota Constitution provide that no person shall be deprived of "life, liberty, or property without due

process of law." Daily v. City of Sioux Falls, 802 N.W.2d 905, 910–11 (S.D. 2011) (citing U.S. Const. amend. XIV, § 1; S.D. Const., art. VI, § 2). But the Supreme Court of South Dakota has declined to recognize a private cause of action under the due process clause found in the state's constitution. See Est. of Johnson *ex rel.* Johnson v. Weber, 898 N.W.2d 718, 732–34 (S.D. 2017) (recognizing that the South Dakota Supreme Court has "yet to hold that Article IV, § 2 is self-executing, and that a violation thereof gives rise to a private cause of action for damages[]" and declining to recognize a new private cause of action). Therefore, Arehart's state-law claim alleging a violation of Article VI, Section 2 of the South Dakota Constitution is dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

**III. Motion for Preliminary Injunction**

Arehart filed a motion for preliminary injunction requesting that he receive cataract surgery. Doc. 5. Arehart alleges that he is "going blind" and that he "need[ed] Cataract Surgery Months ago, to help retain the little bit of Sight [he] do[es] have." Doc. 5-1 at 1. But Arehart has not been able to receive this surgery due to his incarceration and alleges that he has "been on the list to be Seen by Outside Medical for months," but keeps getting a response that he has "been Scheduled an Outside appointment Very Soon by the provider." Id. at 9.

"A preliminary injunction is an extraordinary remedy never awarded as of right." Cigna Corp. v. Bricker, 103 F.4th 1336, 1342 (8th Cir. 2024) (quoting Winter v. Nat'l Rsch. Def. Council, Inc., 555 U.S. 7, 24 (2008)). The primary function of a preliminary injunction "is to preserve the status quo until, upon final hearing, a court may grant full, effective relief." Id. (quoting Ferry-Morse Seed Co. v. Food Corn, Inc., 729 F.2d 589, 593 (8th Cir. 1984)). "Whether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the

injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981) (en banc). The purpose of preliminary relief, such as a preliminary injunction, is to preserve the status quo and prevent irreparable harm until a court has an opportunity to rule on the merits of the complaint. Id. at 113 n.5 (citation omitted). "In the prison context, a request for injunctive relief must always be viewed with great caution because judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration." Goff v. Harper, 60 F.3d 518, 520 (8th Cir. 1995) (citation modified).

Arehart requests that the Pennington County Jail arrange for him to receive immediate cataract surgery or that he be released from custody so that he may receive the surgery. See Docs. 5, 5-1. But Arehart does not name any administrator or health care provider at the Pennington County Jail. See Doc. 1. Arehart's motion must be denied because his request for preliminary injunctive relief is not related to the allegations in his complaint against the sole defendant, arresting Officer Glass. A plaintiff seeking injunctive relief "must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." Devose v. Herrington, 42 F.3d 470, 471 (8th Cir. 1994) (per curiam). "It is inappropriate to grant a preliminary injunction for matters 'lying wholly outside the issues in the suit.'" Brakeall v. Stanwick-Klemik, No. 4:17-CV-04101-LLP, 2019 WL 3807272, at *1 (D.S.D. Aug. 13, 2019) (quoting De Beers Consol. Mines v. United States, 325 U.S. 212, 220 (1945)). As discussed above, Arehart's complaint alleges a Fourth Amendment unreasonable seizure claim, a Fifth Amendment self-incrimination claim, and a Fourteenth Amendment substantive due process claim. See Doc. 1. Arehart does not allege a claim for deliberate indifference to

serious medical needs, or any other claim based on his alleged inability to receive the surgery.[3] See generally id. Therefore, Arehart's motion for preliminary injunction, Doc. 5, is denied.

## IV. Conclusion

For the reasons explained herein, it is

ORDERED that Arehart's motion for leave to proceed in forma pauperis, Doc. 2, is granted. It is further

ORDERED that the Clerk of Court shall send a copy of this order to the appropriate financial official at Arehart's institution. It is further

ORDERED that the institution having custody of Arehart is directed that whenever the amount in Arehart's trust account, exclusive of funds available to him in his frozen account, exceeds $10.00, monthly payments that equal 20 percent of the funds credited the preceding month to Arehart's trust account shall be forwarded to the U.S. District Court Clerk's Office under 28 U.S.C. § 1915(b)(2) until the $350 filing fee is paid in full. It is further

ORDERED that Arehart's claims against Officer Glass in his official capacity are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). It is further

ORDERED that Arehart's Fourth Amendment unreasonable seizure claim against Officer Glass in his individual capacity for money damages survives § 1915A screening. It is further

ORDERED that Arehart's Fifth Amendment self-incrimination claim against Officer Glass in his individual capacity for money damages is dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). It is further

---

[3] Should Arehart wish to pursue a claim related to his medical needs, he may do so by filing a separate complaint in a new case or an amended complaint pursuant to Federal Rule of Civil Procedure 15.

ORDERED that Arehart's Fourteenth Amendment substantive due process claim against Officer Glass in his individual capacity for money damages survives § 1915A screening. It is further

ORDERED that Arehart's state-law claim alleging a violation of Article VI, Section 2 of the South Dakota Constitution is dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). It is further

ORDERED that Arehart's motion for preliminary injunction, Doc. 5, is denied. It is further

ORDERED that the Clerk shall send one blank summons form and Marshal Service Form (Form USM-285) to Arehart so that he may cause the complaint to be served upon Officer Glass. It is further

ORDERED that Arehart shall complete and send the Clerk of Courts the summons and USM-285 form for the defendant. Upon receipt of the completed summons and USM-285 form, the Clerk of Court will issue the summons. If the completed summons and USM-285 form are not submitted as directed within 30 days of the date of this order, the action may be dismissed for failure to prosecute. It is further

ORDERED that the United States Marshals Service shall serve the completed summons, together with a copy of the complaint, Doc. 1, and this order, upon the defendant. It is further

ORDERED that the defendant will serve and file an answer or responsive pleading to the complaint on or before 21 days following the date of service or 60 days if the defendant falls under Fed. R. Civ. P. 12(a)(2) or (3). It is finally

ORDERED that Arehart will keep the Court informed of his current address at all times. All parties are bound by the Federal Rules of Civil Procedure and by the Court's Local Rules while this case is pending.

DATED November 19th, 2026.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE